**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ZEEBAAS, LLC | : |
| MESA MARINE, LLC, | : |
| KRZSYSTOF RYDZEWSKI | : |
|    PLAINTIFFS, | : |
| | : CIVIL ACTION NO. 3:11cv11(VLB) |
| | : |
|    v. | : OCTOBER 21, 2011 |
| | : |
| ROBER W. KOELEWYN | : |
| DANCO SPORTS, INC. | : |
|    DEFENDANTS. | : |

<u>MEMORANDUM OF DECISION DENYING DEFENDANT DANCO SPORTS, INC.'s
[DKT. #31] MOTION TO DISMISS AND DENYING PLAINTIFFS' [DKT. #29] MOTION
FOR PRELIMINARY INJUNCTION</u>

      The Plaintiffs, ZeeBaaS, LLC ("ZeeBaaS"), Mesa Marine, LLC ("Mesa") and

Krzsystof Rydzewski ("Rydzewski") brought this action against Robert W.

Koelewyn ("Koelewyn") and Danco Sports, Inc. ("Danco").  Plaintiff asserts

causes of action for breach of contract against Koelewyn.  Plaintiffs have also

asserted causes of action for breach of fiduciary duties, breach of the covenant

of good faith and fair dealing, violation of Connecticut's Uniform Trade Secrets

Act ("CUTSA"), Conn. Gen. Stat. §35-50 et. seq., and Connecticut's Unfair Trade

Practices Act ("CUTPA") Conn. Gen. Stat. §42-110b et. seq., against both

Koelewyn and Danco.  Defendants have moved to dismiss the complaint pursuant

to Fed. R. Civ. P. 12(b)(1) for failure to state a claim and 12(h)(3) for lack of subject

matter jurisdiction based on a lack of complete diversity of citizenship.  Plaintiffs

have moved for a preliminary injunction and order to show cause against both

Koelewyn and Danco on the basis of their verified complaint enjoining Defendants from making use of ZeeBaaS's confidential information.

<u>Factual Allegations</u>

The following facts are taken from Plaintiffs' complaint unless otherwise noted.  ZeebaaS is a limited liability company maintaining its principal place of business in Stratford Connecticut.  [Dkt. #28, Amended Complaint at ¶3].  Mesa is a limited liability company maintaining its principal place of business in Shelton Connecticut.  [*Id.* at ¶4].  Mesa is a member in ZeebaaS.  [*Id.*].  Koelewyn is a former employee of ZeeBaaS who is purportedly residing in China.  [*Id.* at ¶5].  The record is devoid of facts indicating his domicile or citizenship.  Danco is a Florida corporation maintaining its principal place of business in Stuart Florida.  [*Id.* at ¶6].  Rydzewski is an individual residing in Easton Connecticut.

ZeeBaaS was founded by W. Parker Seeley, Jr. on October 31, 2005 for the purpose of manufacturing and distributing for sale high-quality fishing reels.  Mesa was admitted to ZeeBaaS as an additional member of the Company on January 1, 2008.  [*Id.* at ¶¶7-8].  Koelewyn acquired the interest of Seeley in ZeeBaaS and executed a Confidentiality and Non-Competition Agreement as part of the January 1, 2008 Amended and Restated Operating Agreement of ZeeBaaS.  [*Id.* at ¶¶10-11].  Effective January 1, 2008, Koelewyn was appointed President of ZeeBaaS.  [*Id.* at ¶12].  As consideration for his employment and acquisition of a membership interest in ZeeBaaS, Koelewyn executed an "employment terms of president" which was attached as a schedule to the Amended and Restated

Operating Agreement of ZeeBaaS which expressly stated that as president Koelewyn would not use for his benefit or purpose, nor disclose to others ZeeBaaS's proprietary information.  [*Id.* at ¶¶13-14].  Plaintiffs allege that Koelewyn gained access to ZeeBaaS's sensitive confidential information in his capacity as President of ZeeBaaS.  [*Id.* at ¶¶18-19].   Plaintiffs also allege that Koelewyn violated his obligations to ZeeBaaS by entering into various business arrangements with competitor companies and revealed the confidential and proprietary information of ZeeBaaS to these other companies.  [*Id.* at ¶27].

Danco assisted ZeeBaaS in importing its products from China to the United States.  [*Id.* at ¶20].   Koelewyn was the primary contact between Danco and ZeeBaaS.  [*Id.* at ¶21].  Plaintiffs allege upon information and belief that during his tenure with ZeeBaaS, Koelewyn provided services to, consulted with, and entered into various arrangements with Danco to develop products for the market.  [*Id.* at ¶24].  Plaintiffs allege that Danco, as ZeeBaaS's importer, breached its fiduciary duty as well as the covenant of good faith and fair dealing owed to ZeeBaaS.  [*Id.* at ¶¶29-34].  Plaintiffs also allege that Danco and Koelewyn violated CUTSA and CUTPA.  [*Id.* at ¶¶36-37].

Koelewyn's employment with ZeeBaaS ended on December 6, 2010.  On the same date, Plaintiffs allege that Koelewyn was expelled as a member of ZeeBaaS. [*Id.* at ¶¶22-23].

<u>Procedural Background</u>

On January 5, 2011, Plaintiffs filed their complaint against Koelewyn and Danco.  On March 3, 3011, Koelewyn moved to dismiss the complaint as against him pursuant to Fed. R. Civ. P. 12(b)(5) due to insufficient service of process on the basis that he was improperly served in person by a state marshal in Stratford Connecticut on January 7, 2011, service was effected by means of fraud or trickery during a settlement meeting.  [Dkt. #1, 23].  On June 30, 2011, Plaintiffs consented to the granting of Koelewyn's motion to dismiss.  [Dkt. #51].  On September 8, 2011, the Court granted Koelewyn's motion to dismiss in light of Plaintiffs' consent to the insufficiency of service of process.  [Dkt. #56].

On May 12, 2011, Danco moved to dismiss the complaint based on lack of complete diversity of citizenship.   In particular, Danco argued that diversity was destroyed since Koelewyn, a United States citizen, who permanently resides in China is stateless for purposes of diversity jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1988) (holding that a stateless party destroys diversity jurisdiction).  Further, Danco argued that Koelewyn is a central and indispensible party in the action under Fed. R. Civ. P. 19 and stated in its motion papers that it intended to move pursuant to Fed. R. Civ. P. 19 should Defendant Koelewyn's motion to dismiss be granted.  [Dkt. #54].

A. <u>Joinder under Rule 19</u>

Since Defendant has argued that Koelewyn is an indispensable party in its motion to dismiss, the Court construes the motion to dismiss as a motion for

joinder under Rule 19.[1]  Here, Danco would not be entitled to relief pursuant to Rule 19(a)(1) as the rule only permits joinder of a person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1).  Since the joinder of Koelewyn would destroy diversity jurisdiction, it would deprive the court of subject-matter jurisdiction.  However, if Danco can establish that Koelewyn should be considered a required party under Rule 19(a)(1), Danco could be entitled to relief pursuant to Rule 19(b) which provides that "if a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."   Fed. R. Civ. P. 19(b).

The Court must first determine whether under Rule 19(a)(1) Koelewyn should be considered a required party.  Rule 19(a)(1) provides the following factors to determine whether a person is a required party: "(A) in that person's absence, the court cannot complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter

---

[1] "Prior to December 1, 2007, the two-step Rule 19 inquiry asked first whether a party was 'necessary' and second whether that party was 'indispensable,' and thus whether its non-joinder required the court to dismiss the case. The change to the current determinations of first whether a party is 'required' and second whether the court must dismiss the action if joinder is not feasible were intended to be stylistic only…The Second Circuit has stated, moreover, that '[t]here is no substantive difference between the present rule and the rule ... prior to the 2007 amendment.'" *Aguinaga v. UBS AG*, No.09CIV.03261, 2010 WL 5093433, at *4 n.5 (S.D.N.Y. Dec. 14, 2010) (citing *CP Solutions PTE, Ltd. v. General Electric Co.*, 553 F.3d 156,159 n.2 (2d Cir. 2009)).

impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).

Here, the Court sees no reason why relief cannot be completed among the existing parties.  In particular, Danco argues that without Koelewyn there can be no action against Danco as Koelewyn was Danco's primary contact with ZeeBaaS and "all of Plaintiffs' allegations stem from that relationship."  [Dkt. #54, Def. Reply Mem. at 5-6].  However, it is possible to obtain the evidence needed to demonstrate that Danco violated CUTSA or CUTPA or breached its fiduciary duty or the covenant of good faith and fair dealing without naming Koelewyn as a defendant in the action.  The existing parties would be able to obtain discovery from the books, records and computers of ZeeBaaS, from the parties who bought goods and services derived from the use of Plaintiffs' proprietary information and also from Koelewyn as a non-party regardless of his purported residence abroad. In his Motion to Dismiss, Koelewyn expressed his prior receptivity to explaining events to ZeeBaaS.  Moreover, it is well recognized "that facilitating discovery is not a basis for involuntary joinder.  Courts have explicitly rejected the argument that knowledge of relevant information renders an individual an indispensible party."  *Atlantic Mut. Ins. Co. v. Polar Air Cargo, Ltd.*, No.99CIV3176, 2000 WL 45706, at *2 (S.D.N.Y. Jan. 20, 2000) (internal quotation marks and citation omitted).

The fact that Koelewyn might also be liable for the same causes of action from the same underlying facts does not affect the relief that the Plaintiffs can obtain from Danco.  Put another way, the relief that Danco would owe Plaintiffs if it did breach its fiduciary duty, the covenant of good faith and fair dealing and violated CUTSA or CUTPA should not be affected by the inclusion or exclusion of Koelewyn in this action.  However, if Danco believes that it is being held liable for injuries that Koelewyn caused, it may be permitted under Fed. R. Civ. P. 14(a)(1) to join Koelewyn as a third-party defendant.  *See* Fed. R. Civ. P. 14(a)(1) ("a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it").

The Court recognizes that at first glance Koelewyn might be seen to have an interest relating to the subject of the action in which disposition of the action in his absence may impede his ability to protect such interest.  On the surface, the judgment rendered in this case could lead to concerns regarding issue preclusion if Koelewyn were separately sued in a later action.  For example, if there is a finding that Koelewyn gave trade secrets to Danco in this action, in a later action Koelewyn might fear that he might be precluded from proving otherwise.   However, it is well established that a "person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties runs up against the deep-rooted historic tradition that everyone should have his own day in court.  Indicating the strength of that tradition, we have often repeated the general rule that one is not bound by a judgment in

7

*personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 892-893 (2008) (internal quotation marks and citation omitted); *Rose v. Simms*, No.95CIV.1466, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29, 1995) ("while it may be true that a court in a later litigation may consider an earlier finding, it is plain that a prior finding would not be binding upon [a party who] was not a party to the instant action") (internal quotation marks and citation omitted).

In addition, courts have held that where "the preclusive effect of an action in any related litigation is speculative … joinder of absent party is not compulsory under Rule 19." *See Graco, Inc. v. PMC Global, Inc.*, Np.08-1304, 2009 WL 904010, at *10 (D.N.J. Mar. 31, 2009) (citing *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008)); *see also In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008) ("The mere possibility of collateral estoppel is not enough; '[r]ather, it must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments.'") (*quoting* Janney Montgomery Scott, 11 F.3d 399, 409 (3d Cir. 1993)). Accordingly, the Court finds that no prejudice would result towards Koelewyn if the current litigation proceeds in his absence.

Lastly, the possibility that Plaintiffs might be able to proceed in a separate suit against Koelewyn at a later time does not render Koelewyn a required party in the present action against Danco. "The 'multiple liability' clause of Rule 19(a) compels joinder of an absentee to avoid inconsistent *obligations,* not to avoid

inconsistent adjudications or results." *Isogon Corp. v. Amdahl Corp.*, No.97CIV.6219, 1997 WL 759435, at *3 (S.D.N.Y.  Dec. 10, 1997) (citation omitted and emphasis in the original).  Danco would not be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations whatever the outcome of a possible subsequent action against Koelewyn.  The Plaintiffs would be precluded from recovering against Danco on the basis of res judicata in any subsequent action against Koelewyn.  Therefore, the Court does not discern any basis for finding that Koelewyn should be a required party under Rule 19(a)(1).

However assuming arguendo that Koelewyn is a required party under Rule 19(a), under Rule 19(b) the Court is still obligated to determine whether in equity and good conscience the action should proceed among the existing parties or should be dismissed.  Rule 19(b) provides the following factors for courts to consider in making such a determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  Further, the Second Circuit has instructed "that the district court should take a 'flexible approach' under Rule 19(b) when deciding whether parties are indispensable and that 'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action

impossible.'" *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) (quoting *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)).

As discussed above, the Court is not persuaded that a judgment rendered in Koelewyn's absence would prejudice him.  While the Court does recognize that judicial efficiency would be served if Plaintiffs brought suit against both Koelewyn and Danco at the same time, here the fact that Koelewyn resides abroad is an impediment to Plaintiffs from being able to do so.   There is a strong likelihood that Plaintiffs would not have an adequate remedy should this case be dismissed in light of the difficulty of effecting service of process abroad on Koelewyn under Connecticut's long arm statute.  Finally, Danco has the ability to offer evidence of its own acts as distinguished from those of Koelewyn obviating that it might be held liable for his conduct.  Therefore Plaintiffs would suffer significant prejudice as they would likely be unable to proceed in a state court action against both Koelewyn and Danco.  Accordingly the Court finds that it would further equity to allow the action to proceed in Federal Court against just Danco.

Lastly the Court notes that the facts and circumstances of the present action better correspond with a determination under Rule 20 regarding permissive joinder of parties and not Rule 19 regarding required joinder.  Under Rule 20(2), a person may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(2).   Here there are common questions of law or fact between the claims that could be asserted against Koelewyn and Danco and any right of relief arises out of the same transaction or occurrence. However Danco is not entitled to have the Court join Koelewyn under Rule 20 and the Court will not do so in light of the fact that it would deprive the Court of subject-matter jurisdiction.

## B. Danco's Motion to Dismiss

### Legal Standard

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003).  However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).  *Id.*  In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal

quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

*Analysis*

Danco argues that diversity is also lacking as Koelewyn should still be considered a member of ZeeBaaS.  "[I]t is well established that an artificial legal entity other than a corporation does not have a state of incorporation or 'principal place of business' for diversity-jurisdiction purposes, and its citizenship is instead determined by the citizenship of all of the members of that entity." *Samantha Szewczyk, PPA v. Wal-Mart Stores, Inc.*,  No.3:09cv1449, 2009 WL 3418232, at *1 (D. Conn. Oct. 19, 2009) (citation omitted).  Danco argues that if Koelewyn is still a member of ZeeBaaS and since Koelewyn is stateless for purposes of diversity jurisdiction then ZeeBaaS cannot be diverse from Danco. In addition, Danco argues that the Amended Complaint does not allege that Koelewyn has been removed as a member of ZeeBaaS prior to the filing of the initial action and that a party should not be permitted to rewrite their pleading in motion papers.  *See* [Dkt. #54, Def. Reply. Mem. at 4].  However the Amended Complaint clearly alleges that "[o]n December 6, 2010, Koelewyn was expelled from the Company for cause."  [Dkt. #28, Amended Compl. at ¶23].  The Court

"must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009).   Accordingly, the Court must assume that Koelewyn was expelled from the Company in 2010 and is therefore no longer a member of ZeeBaaS when the action was filed in 2011.

In addition, Plaintiffs have submitted in response to Danco's motion to dismiss, an affidavit from Kathleen McCann an agent of ZeeBaaS attesting to the fact that ZeeBaaS terminated Koelewyn's membership in ZeeBaaS at a December 6, 2010 meeting and attached a transcription of the recording of that meeting. *See* [Dkt. #32, Ex. A].  At the meeting, a motion to expel Koelewyn as a member of ZeeBaaS was made and passed pursuant to Article 8.8 of the Operating Agreement.  [*Id.*].  Danco summarily contends that the proprietary of the December 6, 2010 meeting has been disputed by Koelewyn.  However, Danco does not explain how or why ZeeBaaS's expulsion of Koelewyn from ZeeBaaS was improper or not pursuant to the terms of the Operating Agreement. Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated that Koelewyn was expelled as a member of ZeeBaaS.

Danco also argues that the Amended Complaint does not adequately allege complete diversity of citizenship because it does not specify the citizenship of all the members of the Plaintiff limited liability companies.  In light of threshold issue of diversity jurisdiction, the Court orders that Plaintiffs identify the citizenship of each member of ZeeBaaS, LLC and Mesa Marine, LLC in order for the Court to

assess if there is complete diversity between Plaintiffs and Danco within fourteen days of this Decision.  In addition, Plaintiffs, within fourteen days of this Decision, are ordered to submit affidavits from each member of ZeeBaaS, LLC and Mesa Marine, LLC indicating (1) the state in which each member pays taxes; (2) the state in which each member is registered to vote; and (3) the state in which each member is licensed to drive a motor vehicle.  Accordingly, Defendant's Motion to Dismiss is denied without prejudice to filing a motion to dismiss within 28 days of the Plaintiff's full compliance with the Court's Order to disclose information concerning its members and their citizenship.

## C. Plaintiffs' Motion for Preliminary Injunction

Plaintiffs moved for a preliminary injunction and order to show cause against Koelewyn and Danco solely on the basis of their allegations in the verified Amended Complaint pursuant to Fed. R. Civ. P. 65.  Since Plaintiffs have consented to the dismissal of Koelewyn from this lawsuit on the basis of insufficient service of process, the Court construes Plaintiffs' motion for an injunction as just directed towards Danco.  Danco argues that Plaintiffs have failed to demonstrate a likelihood of success on the merits or that irreparable harm will result in the absence of action.  Danco also argues that Plaintiffs have not shown that money damages are inadequate or that the balance of equities weigh in favor of the Plaintiffs.  *See* [Dkt. #42].

Historically, the standard for a preliminary injunction required a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets*, v. *VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Recent decisions however, reflect that the Second Circuit has changed the standard that it applies to preliminary injunctions. Specifically, in *Salinger v. Colting*, 607 F.3d 68, 74-75 (2d Cir. 2010), the Second Circuit held that the standard for preliminary injunctions was "inconsistent with the 'test historically employed by courts of equity' and ha[d] therefore, been abrogated by the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006)." As explained by the Southern District of New York:

> In *Salinger,* the court held that a preliminary injunction should issue upon a showing of the plaintiff's likelihood of success on the merits only where the plaintiff has only shown that: (1) he is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships tips in his favor; and (4) the public interest would not be disserved, by the issuance of a preliminary injunction*.*

*Rex Medical v. Angiotech Pharmaceuticals, Inc.*, 754 F. Supp. 2d 616, 62 (S.D.N.Y. 2010).

While the Second Circuit, in *Salinger*, stated that its holding applied to "preliminary injunctions in the context of copyright cases" the court also observed that it saw "no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." *Salinger*, 607 F.3d at 78 n. 7 (emphasis in original). The Court finds it unnecessary to conclude whether the Second Circuit's opinion in *Salinger* extends to disputes outside the copyright context as

Plaintiffs have failed to meet their burden under either the earlier or more exacting standard articulated in *Salinger*.

First, Plaintiffs have not demonstrated any likelihood of success on the merits.   The verified Amended Complaint is devoid of any specific factual allegations regarding Danco's conduct which plausibly suggest that Danco violated CUTSA, CUTPA, was a fiduciary or breached its fiduciary duty or the covenant of good faith and fair dealing.   Plaintiffs conclusory allege that "Koelewyn provided services to Danco and consulted and entered into various arrangements with Danco in the pursuit of developing products for market."  [Dkt. #28, Amended Compl. at ¶24].  Plaintiffs also allege that Koelewyn "divulged to Danco trade secrets and proprietary information of ZeeBaaS" and that Koelewyn "accepted work from Danco on projects to develop ideas and products for Bass Pro to the exclusion of ZeeBaaS. " [*Id.* at ¶27e and ¶27j].  Lastly, Plaintiffs allege that Koelewyn "devoted his time, energy, and creativity to developing fly reel projects with Honchi and Danco to the exclusion of ZeeBaaS."  [*Id.* at ¶27k].

Plaintiffs' main claim against Danco stems from its allegation that Danco acquired ZeeBaaS's trade secrets in violation of CUTSA.  It appears that the alleged violation of CUTSA is also the basis for Plaintiffs' claims that Danco violated CUTPA and breached its fiduciary duty and the covenant of good faith and fair dealing.  Therefore in order to assess Plaintiffs' likelihood of success on the merits, the Court will examine Plaintiffs' CUTSA claim.

CUTSA defines a trade secret as: information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Conn. Gen. Stat. §35-51(d).

In evaluating trade secrets, Connecticut courts have considered the following factors:

> (1) the extent to which information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the se secrecy of the information; (4) the value of the information to the employer and its competition; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others; (7) the extent to which the employer-employee relationship was a confidential or fiduciary one; (8) the method by which the employer acquired or compiled the information; and (9) the unfair advantage gained by the employee from using the employer's information.

*Genworth Fin. Wealth Management, Inc. v. McMullan*, 721 F.Supp.2d 122, 126 (D. Conn. 2010) (citation omitted).

CUTSA, in turn, defines misappropriation as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, including but not limited to disclosures made under section 1–210, sections 31–40j to 31–40p, inclusive, or subsection (c) of section 12–62; or (iii) derived from or through a

person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Conn. Gen. Stat. §35-51(b).

First, Plaintiffs have failed to identify what specific confidential and proprietary information that Danco allegedly received from Koelewyn.  Therefore, the Court cannot assess whether Danco actually received information which would qualify as a trade secret under CUTSA.   Moreover without such information, the Court cannot possibly assess whether the information is known outside the business.  Plaintiffs have also failed to allege any facts indicating (i) if ZeeBaaS took measures to guard the secrecy of the information that Danco allegedly received; (ii) the value of such information to ZeeBaaS and its competition; (iii) the amount of effort or money expended by ZeeBaaS in developing the information; or (iv) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Assuming that Koelewyn divulged information to Danco which could be considered a trade secret under CUTSA, Plaintiffs have failed to allege any facts suggesting that Danco misappropriated ZeeBaaS's trade secrets within the meaning of CUTSA.  Plaintiffs have simply not alleged that Danco knew or had reason to know that the information allegedly divulged to it by Koelewyn was acquired by improper means.

Plaintiffs have also failed to sufficiently establish that Danco was a fiduciary to ZeeBaaS.  "The essential elements to pleading a cause of action for breach of fiduciary duty under Connecticut law are: (1). That a fiduciary

relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; (2). That the defendant advanced his or her own interests to the detriment of the plaintiff; (3). That the plaintiff sustained damage; (4). That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *McCreary v. One Strawberry Hill Ass'n, Inc.*, No.FSTCV106006749, 2011 WL 2150442, at *2 (Conn. Super. Ct. April 29, 2011) (internal quotation marks and citation omitted).  "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Biller Assocs. v. Peterken*, 269 Conn. 716, 723 (2004).  Here Plaintiffs have summarily alleged Danco as an importer was a fiduciary of ZeeBaaS but have not established that Danco's relationship with ZeeBaaS was characterized by a unique degree of trust and confidence, that Danco had superior knowledge, skill or expertise, or had a duty of loyalty toward ZeeBaaS.  Therefore, Plaintiffs have failed to establish a likelihood of success on the merits.  Likewise, Plaintiffs' conclusory allegations do not raise even sufficiently serious questions going to the merits to make them a fair ground for litigation.

Second, Plaintiffs have failed to demonstrate irreparable harm.  Plaintiffs have not alleged that Danco has used and is continuing to use the confidential or proprietary information it allegedly received from Koelewyn to ZeeBaaS's

detriment.   "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."   *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).  Here, Plaintiffs have not even alleged that they are being harmed by Danco's alleged misappropriation of ZeeBaaS's trade secrets.  They have only alleged that Koelewyn "divulged trade secrets" to Danco.   [Dkt. #28, Amended Compl. at ¶27e].  There are simply no facts alleged which would support a finding that Plaintiffs are suffering an actual and imminent harm.

Further, courts should not apply a rebuttable presumption of irreparable harm in cases involving trade secret misappropriation except in certain limited circumstances:

> A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. Where a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.

*Faiveley Transport Malmo* AB *v. Wabtec Corp.*, 559 F.3d 110, 118-119 (2d Cir. 2009) (internal quotation marks and citation omitted).  Here, Plaintiffs have not established that Danco will disseminate ZeeBaaS's trade secrets to a wider audience or otherwise irreparably impair the value of those secrets.   As the

Second Circuit observed, Danco as the alleged misappropriator will have the same incentive as ZeeBaaS to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.  Therefore, an award of money damages should provide a complete relief.  It is well established that "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Further considering the lack of information provided to the Court regarding what "trade secrets" were divulged to Danco and whether Danco's missapropriation of such "trade secrets" is actually harming ZeeBaaS, the Court cannot conclude that the balance of hardships tips decidedly toward the Plaintiffs.  If anything, the balance of hardships tips decidedly in favor of Danco if the Court were to grant a preliminary injunction.  A preliminary injunction should be narrowly drawn and therefore "relief should be narrowly tailored to fit the specific legal violations and to avoid unnecessary burdens on lawful commercial activity." *Faiveley Transport Malmo AB*, 559 F.3d at  119 (internal quotation marks and citation omitted).   Considering the lack of information provided by Plaintiffs, the Court would be unable to narrowly tailor any injunction to unnecessarily burden Danco's lawful commercial activity.   Accordingly, a preliminary injunction that is not narrowly tailored would present undue hardship on Danco.

Plaintiffs' reliance on conclusory allegations which summarily state that Koelewyn divulged ZeeBaaS's trade secrets to Danco without more is insufficient to support the extraordinary relief requested as a preliminary injunction is "an

21

extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *See also Robles v. Khahaifa*, No.09-cv-0718, 2010 WL 811637, at *1 (W.D.N.Y. Mar. 8, 2010) ("Plaintiff's conclusory allegation that the facility physician, Douglas, is using a form of administratively and bureaucratically policy and procedure set up by the medical administration to justify delay of medical care is insufficient to support a request for a temporary restraining order and preliminary injunction. Plaintiff's own allegations and statements are simply insufficient to support the extraordinary relief requested") (internal quotation marks and citation omitted); *Litho Prestige, Div. of Unimedia Group, Inc. v. News America Pub.*, Inc., 652 F.Supp. 804, 809 (S.D.N.Y. 1986) ("Conclusory statements of loss represent an insufficient basis for a finding of irreparable harm").  Plaintiffs' motion for a preliminary injunction is therefore denied.

## Conclusion

Based upon the above reasoning, Plaintiffs' [Dkt. #29] motion for preliminary injunction is DENIED and Defendant's [Dkt. #31] motion to dismiss is DENIED without prejudice to filing a motion to dismiss within 28 days of the Plaintiffs full compliance with the Court's Order to disclose information concerning its members and their citizenship.  The Court also denies Defendant's motion for joinder under Fed. R. Civ. P. 19.


IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: October 21, 2011**