## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZEEBAAS, LLC | : |
| MESA MARINE, LLC, | : |
| KRZSYSTOF RYDZEWSKI | : |
|     PLAINTIFFS, | : |
| | : CIVIL ACTION NO. 3:11cv11(VLB) |
| | : |
| v. | : JUNE 19, 2012 |
| | : |
| ROBER W. KOELEWYN | : |
| DANCO SPORTS, INC. | : |
|     DEFENDANTS. | : |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DKT. #60] MOTION TO DISMISS AND DENYING PLAINTIFFS' [DKT. #65] MOTION TO AMEND THE COMPLAINT

      The Defendant Danco Sports, Inc. ("Danco") has moved to dismiss the Plaintiffs' ZeeBaaS, LLC ("ZeeBaaS"), Mesa Marine, LLC ("Mesa") and Krzsystof Rydzewski ("Rydzewski") amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In the amended complaint, Plaintiffs assert causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, violation of Connecticut's Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. §35-50 et. seq., and Connecticut's Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. §42-110b et. seq.  In response to Defendant's motion to dismiss, Plaintiffs seek leave to amend the complaint withdrawing certain claims and adding a claim for tortious interference with contract.  Defendant opposes the motion to amend as futile.  For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion to amend as futile.

**Procedural Background**

On January 5, 2011, Plaintiffs filed their complaint against Robert W. Koelewyn, a former employee of ZeeBaaS and Danco, ZeeBaaS's importer.  On March 3, 3011, Koelewyn moved to dismiss the complaint as against him pursuant to Fed. R. Civ. P. 12(b)(5) due to insufficient service of process on the basis that he was improperly served in person by a state marshal in Stratford Connecticut on January 7, 2011, service was effected by means of fraud or trickery during a settlement meeting.  [Dkt. #1, 23].  On April 28, 2011, Plaintiffs moved for a preliminary injunction and order to show cause against Koelewyn and Danco enjoining them from making use of ZeeBaaS's confidential information.  [Dkt. #29].  On June 30, 2011, Plaintiffs consented to the granting of Koelewyn's motion to dismiss.  [Dkt. #51].  On September 8, 2011, the Court granted Koelewyn's motion to dismiss in light of Plaintiffs' consent to the insufficiency of service of process.  [Dkt. #56].

On May 12, 2011, Danco moved to dismiss the complaint based on lack of complete diversity of citizenship.   In particular, Danco argued that diversity was destroyed since Koelewyn, a United States citizen, who permanently resides in China is stateless for purposes of diversity jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1988) (holding that a stateless party destroys diversity jurisdiction).  Further, Danco argued that Koelewyn is a central and indispensible party in the action under Fed. R. Civ. P. 19 and stated in its

2

motion papers that it intended to move pursuant to Fed. R. Civ. P. 19 should Defendant Koelewyn's motion to dismiss be granted.  [Dkt. #54].   The Court construed Defendant's motion to dismiss as a motion for joinder under Fed. R. Civ. P. 19.  On October 21, 2011, the Court denied Defendant Danco's motion to dismiss without prejudice to filing a renewed motion, denied the motion for joinder and denied Plaintiffs' motion for preliminary injunction.  *See* [Dkt. #58].

On November 30, 2011, Defendant Danco filed a renewed motion to dismiss that is currently pending before the Court.  On January 20, 2012, Plaintiffs filed its objection to the pending motion to dismiss indicating that they were seeking leave to amend the complaint to withdraw their claims for breach of fiduciary duty, breach of the covenant and good faith and fair dealing, violation of CUTSA and their claim for injunctive relief but seeking to add a claim for tortious interference with contract.  *See* [Dkt. #64].   On January 20, 2012, Plaintiffs filed its motion to amend the complaint and attached the proposed second amended complaint.  *See* [Dkt. #65].

The Court therefore grants Defendant's motion to dismiss Plaintiffs' claims for breach of fiduciary duty, breach of the covenant and good faith and fair dealing, CUTSA and claim for injunctive relief in light of the Plaintiffs' consent to the dismissal of those claims.  In the proposed second amended complaint, Plaintiffs seek to "amplify" their CUPTA claim and add a claim for tortious interference of contract.  On February 10, 2012, Defendant opposed Plaintiffs' motion to amend arguing that any amendment would be futile as the proposed

3

second amended complaint fails to state claims either under CUTPA or for tortious interference of contract.

Consequently, the sole question before the Court is whether Plaintiff's CUPTA and tortious interference of contract claims as alleged in the proposed second amended complaint could withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Factual Allegations

The following facts are taken from Plaintiffs' proposed second amended complaint.  ZeebaaS is a limited liability company maintaining its principal place of business in Stratford Connecticut.  [Dkt. #65, Proposed Second Amended Complaint ("SAC") at ¶3.  Koelewyn is a former employee of ZeeBaaS and an individual and former member of ZeebaaS.  [Id. at ¶4].  Danco is a Florida corporation maintaining its principal place of business in Stuart Florida. [Id. at ¶5].  ZeeBaaS was founded by W. Parker Seeley, Jr. on October 31, 2005 for the purpose of manufacturing and distributing for sale high-quality fishing reels and distributing for sale high-quality fishing reels.  [Id. at ¶6].

Koelewyn executed a Confidentiality and Non-Competition Agreement as part of the January 1, 2008 Amended and Restated Operating Agreement of ZeeBaaS.  [Id. at ¶7].  Effective January 1, 2008, Koelewyn was appointed President of ZeeBaaS.  [Id. at ¶8].  As consideration for his employment and acquisition of a membership interest in ZeeBaaS, Koelewyn executed an "employment terms of president" which was attached as a schedule to the

4

Amended and Restated Operating Agreement of ZeeBaaS.   In the "employment terms of president" Agreement, Koelewyn agreed that (i) he would be responsible for the day-to-day operations of ZeeBaaS including the design, marketing, and sale of ZeeBaaS products; (ii) he would devote his full time, attention and abilities to the business of ZeeBaaS; (iii) he would not directly or indirectly use for his benefit or purposes, nor disclose to others any proprietary information of ZeeBaaS; (iv) for a period of two years neither he or any of his Affiliates would compete with the business of ZeeBaaS or any of its Affiliates. [*Id.* at ¶¶9-10].

Plaintiffs allege that by virtue of Koelewyn's employment, Koelewyn "gained access to sensitive confidential information concerning ZeeBaaS product lines, inventions and ideas as well as access to the identity of ZeeBaaS suppliers, customers, business brokers and potential investors" as well as "knowledge concerning ZeeBaaS' internal business of ZeeBaaS operations, financial statements and business of ZeeBaaS plans for the future, including  mergers, investment relationships and acquisitions."  [*Id.* at ¶12].

Plaintiffs allege that Danco was hired by ZeeBaaS to assist in importing its products from China to the United States.  [*Id.* at ¶13].  "Danco represented that it had contacts in China that would be of assistance to ZeeBaaS in manufacturing and distributing its products."  [*Id.* at ¶14].  Plaintiffs further allege that "Danco knew that Koelewyn was employed by ZeeBaaS and that he owed ZeeBaaS his undivided loyalty."  [*Id.* at ¶15].  Plaintiffs allege that Koelewyn "was the primiary contact between Danco and ZeeBaaS" and that Koelewyn was "expelled from the Company for cause."  [*Id.* at ¶¶16-17].

Plaintiffs allege that "during Koelewyn's tenure with ZeeBaaS, Dance and Koelewyn agreed to collaborate together, to the exclusion of ZeeBaaS, in the pursuit of developing fishing products for market."  [*Id.* at ¶¶19-20].  Plaintiffs further allege that Danco and Koelewyn to (i) engage "in a scheme to start a new business with Honchi under the name "OceanBoss" to promote products that were or should have been the property of ZeeBaaS and did or attempted to secure funds for such endeavor;" (ii) work on projects to develop ideas and market products for Bass Pro and others to the exclusion of ZeeBaaS; (iii) "devote Koelewyn's time, energy and creativity to develop fly reel projects with Honci and Danco to the exclusion of ZeeBaaS." [*Id.* at ¶20].

Plaintiffs allege that Danco tortuously interfered with the contract between Koelewyn and ZeeBaas and that they suffered an "ascertainable loss of money or property." [*Id.* at ¶¶21-24].

<u>Legal Standard</u>

Rule 15 of the Federal rules of Civil Procedure provides that leave to amend the pleadings should be "freely give[n]…when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile."  *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003); *see also Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999) ("[A] district court may properly deny leave when amendment would be futile.").   "Where, as is the case here, a proposed amendment is in response to a motion to dismiss under Rule 12(b)(6), 'leave to

amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief.'" *McLaughlin v. CitiMortgage, Inc.*, No.3:09-cv-1762(MRK), 2010 WL 3037810, at *2 (D. Conn. Aug. 4, 2010) (quoting *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001)); *see also Tocker v. Philip Morris Cos., Inc.,* 470 F.3d 481, 491 (2d Cir.2006).

Accordingly, Plaintiffs' proposed second amended complaint will be considered under the familiar Rule 12 (b) (6) standard in which the Court accepts as true all of the complaint's factual allegations and draws inferences from these allegations in the light most favorable to the plaintiff.  However, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can

choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### Analysis of Tortious Interference of Contract Claim

Defendant argues that Plaintiffs' tortious interference of contract claim should be dismissed because the proposed second amended complaint merely contains a recitation of the elements of tortious interference and is devoid of any allegation that Dance acted improperly or maliciously.  [Dkt. #66, Def. Mem. at p. 7-8].  Under Connecticut law, "[a] claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct."  *Rioux v. Barry,* 283 Conn. 338, 351, 927 A.2d 304 (2007) (citations omitted).  "[N]ot every act that disturbs a contract or business expectancy is actionable.... [A]n action for intentional interference with business relations ... requires the plaintiff to plead and prove at least some improper motive or improper means.... [A] claim is made out [only] when

8

interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself."  *Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 502 n. 24, 656 A.2d 1009 (1995) (Internal quotation marks and citations omitted).

"[F]or a plaintiff successfully to prosecute such an action it must prove that ... the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously ... In the context of a tortious interference claim, the term malice is meant not in the sense of ill will, but intentional interference without justification ... In other words, the [plaintiff] bears the burden of alleging and proving lack of justification on the part of the [defendant]."  *American Diamond Exchange, Inc. v. Alpert*, 101 Conn.App. 83, 90-91 (2007) (internal quotation marks and citations omitted).  Connecticut courts look to Section 767 of 4 Restatement (Second) of Torts which "provides in relevant part: 'In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.'"  *Id.*

Here, Plaintiffs' complaint conclusory alleges that Danco knew of Koelewyn's employment contract with ZeeBaaS and that Koelewyn owed

ZeeBaaS his undivided loyalty.  The proposed second amended complaint merely tenders a naked assertion of Danco's knowledge which is devoid of further factual enhancement.  There are simply no facts alleged which would allow the Court to draw the reasonable inference that Danco was aware of the terms of Koelewyn's employment contract and non-compete agreement.   In order for the Court to find that Danco tortiously interfered with ZeeBaaS's employment agreement with Koelewyn the Court would have to find that Danco knew of the terms of Koelewyn's employment and non-compete agreement and not just that Dance was aware that Koelewyn was employed by ZeeBaaS.  At best, the second amended complaint only plausibly alleges that Danco was aware that Koelewyn was employed by ZeeBaaS and not that Danco was aware of the terms of Koelewyn's employment and non-compete agreement.

In addition, Plaintiffs' proposed second amended complaint is devoid of any factual allegations which support the reasonable inference that Danco had an improper motive or employed improper means.  The proposed second amended complaint contains no allegations that Danco was guilty of fraud, misrepresentation, intimidation or molestation or that Danco acted maliciously. Plaintiffs only allege that Danco and Koelewyn agreed to collaborate together to promote products and develop ideas for fishing products to the exclusion of ZeeBaas.  Plaintiffs fail to allege any facts demonstrating that Danco acted without justification.  *See e.g., Direct Mail Jobs, LLC v. Hughes*, No.HHBCV05009794, 2011 WL 3672086, at *6 (Conn. Super. Ct. July 29, 2011) ("An action for intentional interference with contractual or business relations requires

10

the plaintiff to plead and prove at least some improper motive or improper means. The mere knowledge by a new employer of a new employee's non-compete agreement with a former employer is not sufficient, by itself, to constitute tortious interference…. nor is the mere motive to improve one's own business.  The focus must usually be on whether there was an intent to harm the defendant in the process or an intent to use improper means to gain a competitive advantage.") (citing *Robert S. Weiss & Assoc., Inc. v. Wiederlight*, 208 Conn. 525, 536-37 (1988)); *Webster Financial Corp. v. McDonald*, No.CV084016026S, 2009 WL 416059, at *12 (Conn. Super. Ct. Jan. 28, 2009) (noting that "Superior courts have also reached the same conclusion that mere knowledge of a restrictive covenant alone does not arise to a claim for tortious interference with either the employer's contractual relations with their employees or their business relations with their clients… nor does hiring an employee in violation of a restrictive covenant arise to a claim for tortious interference.") (citations omitted); *Sanford Hall Agency, Inc. v. Dezzanni*, No.CV044000576, 2004 WL 3090673, at *7-8 (Conn. Super Ct. Dec. 3, 2004) ("The plaintiff did not allege and prove any lack of justification on the part of Sinclair. While the evidence shows the existence of a contract between Dezzani and the plaintiff as well as the fact that Sinclair was aware of the existence of such an employment contract, the plaintiff did not establish an intent to interfere with that relationship on the part of Sinclair.  Sinclair hired Dezzani because it considered her a skilled professional insurance salesperson whose expertise would benefit Sinclair's customers. The plaintiff also did not demonstrate any malice or intentional interference on the part of Sinclair…. While hiring one of the

plaintiff's employees may be viewed as an interference with the plaintiff's business, it does not mean that it is tortious since not all interference is considered to be tortious.").

Here, as discussed above Plaintiffs have failed to plausibly allege that Danco was aware of the restrictive covenants in Koelewyn's employment contract.  Even if Plaintiffs had done so, mere knowledge of those restrictive covenants alone would be insufficient as Plaintiffs have failed to plausibly allege that Danco intended to harm ZeeBaaS when it allegedly agreed to collaborate with Koelewyn or had the intent to use improper means to gain a competitive advantage over ZeeBaaS.  Without more, the proposed second amended complaint fails to plead sufficient factual content to allow the Court to draw the reasonable inference that Danco is liable for tortious interference of contract. Accordingly, the Court denies Plaintiffs' motion for leave to amend the complaint to assert a tortious interference of contract claim as futile.

### Analysis of CUTPA Claim

Defendant argues that Plaintiffs' CUTPA claim should be dismissed because the proposed second amended complaint fails to identify what action or practice by Danco was purportedly unfair, does not allege that such action proximately caused any specific harm and conclusorly alleges ascertainable loss of money or property.  [Dkt. #66, Def. Mem. at p. 9].  "[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . and

12

[plaintiff suffered] ascertainable loss of money or property as a result of the defendant's acts or practices."  *Neighborhood Builders, Inc. v. Town of Madison*, 294 Conn. 651, 657 (2010) (quoting CONN. GEN. STAT. § 42-110b(a); CONN. GEN. STAT. § 42-110g(a)).

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].   *Hoffnagle v. Henderson*, No.CV020813972S, 2003 WL 21150549, at *8 (Conn. Super. Ct. April 17, 2003) (internal quotation marks and citations omitted).  "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three…Thus a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy."  *Id.* (internal quotation marks and citations omitted).

"The ascertainable loss requirement is a threshold barrier that limits the class of persons who may bring a CUTPA action seeking either actual damages . . . .  Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that

he has suffered an ascertainable loss due to a CUTPA violation." *Neighborhood Builders, Inc.*, 294 Conn. at 657 (2010) (*quoting Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn.  208, 217-18 (2008)).  "An ascertainable loss is a loss that is capable of being discovered, observed or established.  The term loss . . . has been held synonymous with deprivation, detriment and injury.  To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount."  *Artie's Auto Body, Inc.*, 287 Conn. at 218 (citations and internal quotation marks omitted).  But in order for a loss to be ascertainable it must be "measurable even though the precise amount of the loss is not known."  *Id.*  "A plaintiff also must prove that the ascertainable loss was caused by, or 'a result of,' the prohibited act."  *Id.* (quoting Conn. Gen. Stat. §42-110(g) (a)).  "When plaintiffs seek money damages, the language 'as a result of' in§42-110(g)(a) 'requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.... [P]roximate cause is [a]n actual cause that is a substantial factor in the resulting harm.... The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act.'"  *Id.* (quoting *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997)).

In the proposed second amended complaint under the section entitled "Count II Connecticut's Unfair Trade Practices Act," Plaintiffs do fail, as Defendant contends, to identify which acts of Danco constitute unfair or deceptive acts or practices.  Instead, Plaintiffs conclusory allege that the "conduct of defendant constitutes unfair or deceptive acts or practices" and that

"plaintiff has suffered an ascertainable loss" without any factual content.  *See* [Dkt. #65, SAC at ¶¶23-34].   Under this section, Plaintiffs also indicate that they incorporate by reference all of the general allegations they have pled prior in the complaint into Count II.  At the outset, the Court questions whether a citation which purports to incorporate generalized allegations satisfies Plaintiffs' obligation under Federal Rule of Civil Procedure 8 to give "fair notice of what the Plaintiff's claim is and the grounds upon which it rests."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks and citations omitted); *see also Monson v. Whitby School, Inc.*, No.3:09CV1096(MRK), 2010 WL 3023873, at *3 (D. Conn. Aug. 2, 2010) ("The purpose of Rule 8 is to provide a defendant notice of what they are alleged to have done that the plaintiff claims was unlawful.").   Since Plaintiffs' Count II allegations only contain a bare recital of some and not all the elements of a CUTPA claim, it is entirely unclear what general allegations Plaintiffs are relying on to support their CUTPA claim. On this basis alone, the Court finds that Plaintiffs have failed to give fair notice to Defendant of what their CUTPA claim is and the ground upon which it rests.

In addition, even if the Court examines the generalized allegations which Plaintiff purportedly incorporated by referenced into their CUPTA Count II claim, Plaintiffs still fail to plead sufficient factual content to allow the Court to draw the reasonable inference that Danco is liable for violating CUTPA.   Plaintiffs only allege that Danco and Koelewyn agreed to (i) start a new business with Honchi to promote products that should have been the property of ZeeBaaS; (ii) develop ideas and market products for Bass Pro to the exclusion of ZeeBaaS; (iii) devote

15

"Koelewyn's time, energy and creativity to developing fly reel projects with Honchi and Danco to the exclusion of ZeeBaaS."  [Dkt. #65, SAC at ¶20]. However, the proposed second amended complaint is devoid of any allegations that these alleged acts of Danco offend public policy as established by statute or common law or other established concept of unfairness.  Further, the complaint is also devoid of any specific factual allegations that such conduct is immoral, unethical, oppressive or unscrupulous.  *See Daniel R. Kaufman, CPA, LLC v. Vertucci*, No3:11cv912(WWE), 2011 WL 6001632, at \*3 (D. Conn. Nov. 30, 2011) (holding that although "Plaintiff's CUTPA allegations mention Vertucci's use of an unregistered trade mark … the complaint is devoid of facts supporting any violation of public policy as required for CUTPA"); *Priority Sales Management, Inc. v. Carla's Pasta, Inc.*, No.3:10-cv-1918 (CFS), 2011 WL 3819748, at \*3 (D. Conn. Aug. 26, 2011) (noting that "Courts have held that merely stating that the defendant's conduct violates public policy or is unfair and/or deceptive is not sufficient to sustain a CUTPA claim.") (internal quotation marks and citation omitted).

        To the extent that Plaintiff is alleging that these acts offend public policy since they violated Koelewyn's non-compete and employment agreement, such allegations would fail to state a CUPTA violation since as "a general matter, under Connecticut law, the scope of CUTPA does not extend to matters involving the employment relationship."  *Tanner v. Darly Custom Tech, Inc.*, 2001 WL 194991, at \*3 (Conn. Super. Ct. Feb. 8, 2001).  Moreover, Plaintiff does not claim that Defendants knew of the employment agreement much less its terms.

Plaintiffs' generalized allegations also suggest that their CUTPA claim is really predicated on a CUTSA violation. Plaintiffs conclusory allege that Danco agreed to promote products "that should have been the property of ZeeBaaS" which suggests that Danco misappropriated ZeeBaaS's trade secrets. However, Plaintiffs consented to the dismissal of their CUTSA claim. Moreover, it would be inappropriate to allow Plaintiffs to essentially allege a CUTSA claim through the auspices of CUTPA without having to plead and prove the elements of CUTSA.

Lastly, as Defendant contend, Plaintiffs have conclusory alleged they suffered an ascertainable loss. A "plaintiff need only establish an ascertainable loss to state a CUTPA claim, which does not require plaintiff to prove a specific amount of actual damages in order to make out a prima facie case. Instead, a plaintiff seeking to establish a CUTPA violation must simply demonstrate a loss— a deprivation, detriment and injury—that is capable of being discovered, observed or established." *Larobina v. Wells Fargo Bank, N.A.*, No.3:10cv1279(MRK), 2012 WL 1032953, at *6 (D. Conn. Mar. 27, 2012) (internal quotation marks and citations omitted). Here, Plaintiffs have alleged that they suffered an "ascertainable loss." Such an allegation is the mere recital of an element of a cause of action which the Supreme Court in *Iqbal* unequivocally stated is insufficient to survive a motion to dismiss. Unsurprisingly, Plaintiffs have also failed to allege that Danco's conduct was the proximate cause of harm to them as required under CUTPA. S*ee Riverview East Windsor, LLC v. CWCapital LLC*, No.10-cv-872(RNC), 2012 WL 90152, at *8 (D. Conn. Jan. 10, 2012) ("A claim under CUTPA requires that the defendant's conduct be the proximate

17

cause of harm to the plaintiff").  For the all these reasons, Plaintiffs' proposed CUTPA claim could not withstand a motion to dismiss and therefore the Court denies Plaintiffs' motion to amend the CUTPA claim as futile and dismisses Plaintiffs' CUTPA claim.

## Conclusion

Based upon the above reasoning, Defendant's [Dkt. #60] motion to dismiss is GRANTED and Plaintiffs' [Dkt. #65] motion to amend the complaint is DENIED. All of Plaintiff's claims have been dismissed and the Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 19, 2012